IN RE: INQUIRY CONCERNING A JUDGE, Nos. 02-223 AND 03-80
PATTIE S. HARRISON, RESPONDENT

No. 3A05

(Filed 5 May 2005)

**Judges— removal from office—mental and physical incapacities**

A district court judge is officially removed from office for mental and physical incapacities caused by stress and diabetes which interfere with the performance of her duties and are likely to become permanent. N.C.G.S. § 7A-376.

This matter is before the Court pursuant to N.C.G.S. § 7A-376 upon a recommendation by the Judicial Standards Commission entered 18 November 2004 that respondent Pattie S. Harrison, an Emergency Judge of the General Court of Justice, District Court Division, Judicial District Nine A of the State of North Carolina, be removed for mental and physical incapacities interfering with the performance of her duties, which are likely to become permanent. Calendered for argument in the Supreme Court 20 April 2005; determined on the record without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure and Rule 2(c) of the Rules of Supreme Court Review of Recommendations of the Judicial Standards Commission.

*No counsel for Judicial Standards Commission or respondent.*

PER CURIAM.

The issue before this Court, as a result of the recommendation of the North Carolina Judicial Standards Commission (Commission), is whether respondent, Pattie S. Harrison, should be removed from office for mental and physical incapacities interfering with the performance of her duties, which are likely to become permanent, pursuant to N.C.G.S. § 7A-376.

The facts which led to the Commission's recommendation that respondent be removed from office are not in dispute. Special Counsel for the Commission and counsel for respondent stipulated to the following evidence at a 28 October 2004 Commission hearing in Raleigh:

**IN RE HARRISON**

[359 N.C. 415 (2005)]

1. The Respondent gave answers to inquiries from newspapers seeking interviews regarding the grievance filed with the North Carolina State Bar and then those newspapers published the accusations that certain named lawyers and judges . . . had conspired and attempted to have the Respondent assassinated. Also, the accusation was made that the named lawyers and two judges, conspired to file over 200 false complaints against the Respondent with the Judicial Standards Commission and that the same individuals conspired to create a racially intimidating atmosphere thereby violating the Respondent's civil rights. The Respondent should have known that there was insufficient nor credible evidence to support these assertions and should have foreseen the harm that would be caused by giving credence to such inaccurate claims.

2. The Respondent presided over a custody matter entitled Webb v. Webb, Rockingham County, 99 CVD 697. In June 2002, while this matter was pending in the North Carolina Court of Appeals, the Respondent wrote a letter that was prominently featured in the Courier Times Newspaper on Saturday, June 29, 2002. In her letter, the Respondent discussed the case at length and listed the findings of fact that she had made. Upon proper reflection by the Respondent, she now acknowledges that she should not have written anything while the matter was pending in the Appellate Court.

3. The Respondent, while serving in the capacity of an Emergency District Court Judge, filed complaints to the North Carolina State Bar and to the United States Department of Justice requesting investigations and alleging that certain attorneys and judges practicing before her had conspired and attempted to have the Respondent assassinated and had conspired to have over 200 false complaints about the Respondent filed with the Judicial Standards Commission. The Respondent also made note of the fact that of the 200 complaints that had been filed, the Judicial Standards Commission had taken no action against the Respondent. The Respondent should have known that there was insufficient evidence to support these claims and she should not have filed these claims for that reason.

4. The Respondent's Campaign Committee as a part of the Respondent's 2002 judicial election campaign, organized and

advertised a raffle which the Respondent knew or should have known that such conduct was in violation of N.C.G.S. § 14-309.15. In addition, the Respondent acknowledges she was responsible for the supervision of her campaign staff on these matters and that her failure to properly exercise that supervisory control would amount to conduct that was considered a violation of the aforementioned General Statute.

5. The Respondent acknowledges that she has been under a great deal of physical and emotional stress and in addition to that also suffers from diabetes, and that this combination of physical and mental stress along with her medical condition (diabetes) has interfered with her ability to perform the duties of her office and that this is likely to become a permanent situation. The Respondent admits that on these occasions that upon proper reflection she would have handled these matters in an entirely different manner. The Respondent acknowledges that the conduct admitted in this Stipulation would be conduct prejudicial to the administration of justice that could bring the judicial office into disrepute. It is further acknowledged that such conduct could be interpreted to be in violation of Canons 1, 2A, 3A(6) of the North Carolina Code of Judicial Conduct; and could further be interpreted to be in violation of Canon 7(B)(2) of the North Carolina Code of Judicial Conduct that was in force at the time these events occurred.

6. The Respondent agrees to enter the Stipulation to bring closure to this matter and because of her concern for protecting the integrity of the court system.

7. The Respondent hereby waives formal hearing of these matters and agreed to accept a Recommendation from the Commission, to the Supreme Court, that the Respondent be removed from any further holding court in any judicial capacity, including an Emergency Judge due to the existence of the mental and physical stress in addition to her diabetic condition, as previously stated which interfere with her performance of her duties, and which is likely to become permanent.

The Commission concluded: (1) Respondent's conduct violated Canons 1, 2A, and 3A(6) of the North Carolina Code of Judicial Conduct in effect both at the time the events occurred and as amended 2 April 2003, and Canon 7B(2) of the Code of Judicial

Conduct that was in effect at the time the events occurred; (2) Respondent's conduct was prejudicial to the administration of justice and brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376; and (3) Respondent's conduct was the result of mental and physical incapacities caused by stress and diabetes, which conditions are likely to become permanent. Based upon the stipulated and documentary evidence and oral arguments from counsel and the conclusions related thereto, the Commission recommended on 18 November 2004 that "the Supreme Court remove the respondent for mental and physical incapacity interfering with the performance of her duties, which is likely to become permanent, pursuant to N.C.G.S. § 7A-376."

This Court concludes that the Commission's findings of fact were supported by the findings of fact stipulated to by respondent and the other evidence in the record before us. Therefore, we accept the Commission's findings and adopt them as our own. Based upon those findings and the recommendation of the Commission, we conclude and adjudge that respondent should be removed for mental and physical incapacities caused by stress and diabetes, which conditions are likely to become permanent.

Now, therefore, it is ordered by the Supreme Court of North Carolina in conference that the respondent, Pattie S. Harrison, be, and she is hereby, officially removed from office as a judge of the General Court of Justice, District Court Division, Judicial District Nine A, for mental and physical incapacities interfering with the performance of her duties, which are likely to become permanent.